# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN Re TOP TANKERS, INC. SECURITIES LITIGATION | Civil Action No. 06 Civ. 13761 (CM)(KNF) Judge Colleen McMahon |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.    PRELIMINARY STATEMENT ................................................................... 1

    A.    The Settlement ................................................................................ 1

    B.    The Notice Process and the Reaction of the Class .......................... 2

II.   HISTORY AND BACKGROUND OF THE ACTION .................................. 3

    A.    Procedural History ......................................................................... 3

    B.    Investigation and Discovery ........................................................... 5

    C.    Settlement Negotiations .................................................................. 6

III.  THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR
      FINAL APPROVAL UNDER RULE 23(e) .................................................. 6

    A.    The Standard of Review for Approval of Class Action Settlements ................. 6

    B.    The Settlement Is Fair, Reasonable and Adequate and In the
          Best Interest of the Class ................................................................ 8

         1.    The Risks of Litigation ......................................................... 8

              a.    The Risks of Establishing Liability ............................ 9

              b.    The Risks of Establishing Damages ......................... 11

         2.    The Reasonableness of the Settlement In Light of
            the Best Possible Recovery and the Attendant Risks
            of Litigation ....................................................................... 12

         3.    The Complexity, Expense and Likely Duration of
            the Litigation ..................................................................... 13

         4.    The Reaction of the Class to the Settlement ....................... 15

         5.    The Stage of the Proceedings and Amount of
            Discovery Completed ......................................................... 16

i

6.    The Risks of Maintaining the Class Action Through Trial...................17

7.    Ability of the Defendants to Withstand a Greater Judgment................18

IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER............................18

A.    Numerosity, Commonality and Typicality ........................................................18

B.    Adequacy of Representation ...........................................................................19

C.    Predominance of Common Issues And Superiority..........................................20

V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE.......21

VI.    CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    MDL Docket No. 1500,
    2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006)....................................9, 15, 20

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...........................................................................12

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)...............................18, 19, 20

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist.
    LEXIS 28431 (E.D.N.Y. Nov. 15, 2005)......................................................................6

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000).........................................................................16

*In re Blech Secs. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................................18

*Carpe v. Aquila, Inc.*,
    No. 02-0388-CV-W-FJG (W.D. Miss. Mar. 23, 2005)................................................12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).......................................................................................11

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992).............................................................................17

*Cross v. 21st Century Holding Co.*,
    No. 00 Civ. 4333 (MBM),
    2004 U.S. Dist. LEXIS 2283 (S.D.N.Y. Feb. 18, 2004)..............................................19

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................................................7, 8, 17

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    Master File No. 05 Civ. 10240 (CM),
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ...................................7, 11, 16

iii

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 FRD 147 (S.D.N.Y. 2007) ..................................................................................19

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)............................................................................17

*Gordon Partners v. Blumenthal*,
    No. 02 Civ 7377 (LAK),
    2007 U.S. Dist. LEXIS 9110 (S.D.N.Y. Feb. 9, 2007)................................................11

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH),
    2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) .................................13, 15, 21

*In re Host Am. Corp. Secs. Litig.*,
    Master File No. 05-CV-1250 (VLB),
    2007 U.S. Dist. LEXIS 77418 (D. Conn. Oct. 18, 2007) ............................................19

*In re: Gilat Satellite Networks, Ltd.*,
    CV-02-1510 (CPS),
    2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007).......................................13, 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689(SAS),
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 29, 2003).............................8, 9, 12, 21

*Kaufman v. Motorola, Inc.*,
    No. 95 C 1069,
    2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 21, 2000) ...........................................12

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) .................................................................................9

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................6, 7, 12

*In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*,
    No. 02 MDL 1484 (JFK),
    2007 U.S. Dist. LEXIS 93423 (S.D.N.Y. Dec. 19, 2007) .................................8, 12, 22

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................15, 21

iv

*In re MetLife Demutualization Litig.,*
    229 F.R.D. 369 (E.D.N.Y. 2005) ........................................................................19

*In re Michael Milken & Assoc. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993) ...........................................................................9

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984) .....................................................................13

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ............................................................................7, 8

*In re Omnicom Group, Inc. Secs. Litig.,*
    541 F. Supp. 2d 546 (S.D.N.Y. 2008) ................................................................11

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .............11, 12, 15

*In re Salomon Analyst Metromedia Litig.,*
    No. 02 Civ. 7966 (GEL),
    2006 U.S. Dist. LEXIS 41939 (S.D.N.Y. June 20, 2006) ...........................................20

*Schwartz v. Novo Industri A/S,*
    119 F.R.D. 359 (S.D.N.Y. 1988) .......................................................................14

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................13

*Taft v. Ackermans,*
    No. 02 Civ 7951 (PKL),
    2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan 31, 2007) ..............................................21

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.,*
    No. 01-CV-11814(MP),
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) .......................................14, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S. Ct. 2499 (2007) .....................................................................................9

*In re Veeco Instruments Secs. Litig.,*
    No. 05 MDL 01695 (CM),
    2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) .......................................7, 15, 19

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001) ..............................................................................20

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).............................................................6
*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ....................................................9

## Federal Statutes

15 U.S.C. §78u-4(a)(3)(B)(i) ...............................................................19

23(a)    ......................................................................................18, 20

23(a)(1)-(3) ........................................................................................18

23(b)(3) ........................................................................................18, 20

23(a)(4) ..............................................................................................19

## Miscellaneous

Newberg & Conte,
    NEWBERG ON CLASS ACTIONS §11.45 (4th ed. 2002) .................................16

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Joseph A. DeShayes, Jr. ("Lead Plaintiff"), by and through his counsel ("Lead Counsel"), respectfully moves this Court for an order approving the proposed settlement of the above-captioned action (the "Action"), approving the proposed Plan of Allocation and certifying the proposed Class for settlement purposes, all of which this Court preliminarily approved by its Order for Preliminary Approval and for Notice and Hearing dated April 28, 2008 (the "Preliminary Approval Order").

## I.   PRELIMINARY STATEMENT

### A.   <u>The Settlement</u>

Under the terms of the proposed settlement, defendants Top Tankers Inc. ("TOPT" or the "Company," which is now known as Top Ships Inc.), Evangelos Pistiolis ("Pistiolis") and Stamatis Tsantanis ("Tsantanis") (collectively, the "Defendants") have paid the sum of one million two hundred thousand dollars ($1,200,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of Lead Plaintiff and the Class.[1]  The proposed Settlement provides the Class with a substantial recovery in light of the significant risks Lead Plaintiff faced moving forward with this Action, particularly overcoming Defendants' defenses at summary judgment and/or trial, and the possibility that Lead Plaintiff would not be able to obtain a more favorable recovery, if any recovery at all.  This Settlement also avoids the tremendous time and expense continued litigation

---

[1] Defendants' payment is in exchange for the dismissal of all claims brought against Defendants in this Action (the "Settlement").  *See* ¶3 of the Declaration of Benjamin J. Sweet in Support of Final Approval of Settlement, Plan of Allocation and Application for an Award of Attorneys' Fees and Expenses and Reimbursement Award to Lead Plaintiff (the "Declaration" or "Decl.") submitted herewith on behalf of Lead Counsel, the law firm of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK").  The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement dated April 23, 2008 (the "Stipulation"), which was previously filed with the Court.  All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation.

1

would require -- through the completion of merits and expert discovery -- as well as the substantial costs associated with litigating against a foreign corporate defendant and individual defendants located in the Marshall Islands and Greece. As discussed below and in the Declaration, when measured against the substantial benefit of the Settlement, the significant risks, time and expense in continued prosecution of this Action provide a more than adequate basis upon which to find that the Settlement is fair, reasonable and adequate.

### B.        The Notice Process and the Reaction of the Class

Pursuant to the Court's April 28, 2008 Preliminary Approval Order, the Notice of Proposed Settlement, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing (the "Notice") was mailed to 30,293 potential Class Members or their nominees commencing on or before May 13, 2008.[2] In addition, a summary notice was published in *Investor's Business Daily* and over the PR Newswire on May 20, 2008. SCS Aff. ¶6.

The Notice contained a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including without limitation: (i) Lead Plaintiff's estimate of the per share recovery; (ii) the manner in which the Settlement Amount plus interest, less any taxes, administration costs, award of attorneys' fees and expenses to Lead Counsel and reimbursement to Lead Plaintiff (the "Net Settlement Fund") will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement;

---

[2] *See* the Affidavit of Paul Muholland, CPA, CVA, Concerning Mailing of Notice of Proposed Settlement, Motion for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing and Proof of Claim and Release, submitted herewith on behalf of Strategic Claims Services ("SCS"), the Claims Administrator in this Action (the "SCS Aff."), at ¶¶4, 8. The SCS Affidavit is attached as Exhibit 1 to the Declaration, and a copy of the Notice is attached as Exhibit C to the SCS Affidavit.

(iv) the right and mechanism for Class Members to exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement. *See* Exh. 1(C) to the Declaration.

Notably, as of the filing of this Memorandum, not a single objection to the Settlement has been received, and only three Class Members have requested to be excluded from the Class. SCS Aff. ¶10. This complete absence of objections and minimal requests for exclusion confirms Lead Plaintiff's decision to resolve the Action in exchange for the payment of the Settlement Amount and strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.

## II. HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Declaration for a full discussion of, *inter alia*, the factual and procedural history of the Action, the claims asserted, the investigation and discovery undertaken, and the negotiations leading to this Settlement. Decl. ¶¶10-20. For the Court's convenience, a short discussion of these facts is provided below.

### A.    **Procedural History**

On or after December 5, 2006, following the Company's announcement that its auditor Ernst & Young Hellas ("E&Y") had resigned and that the Company intended to restate its financial statements for the first and second quarters of fiscal year 2006, ten securities class action complaints were filed against TOPT and certain of the Company's executive officers in the United States

District Court for the Southern District of New York.[3]  These ten actions were consolidated by the Court on July 30, 2007.  Decl. ¶¶10-11.

Lead Plaintiff filed its Corrected and Amended Consolidated Class Action Complaint (the "Amended Complaint") on October 5, 2007, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC").[4]  The Amended Complaint alleged, among other things, that between March 13, 2006 and November 29, 2006, inclusive (the "Class Period"), Defendants recklessly issued false and misleading financial statements in connection with TOPT's accounting for a "seller's credit" associated with thirteen sale and leaseback transactions totaling $550 million completed in the first and second quarters of 2006 (the "2006 Sale and Leaseback Transactions"). Specifically, the Amended Complaint alleged that Defendants improperly included as revenue a $55 million "seller's credit" in its financial statements for the first and second quarters of 2006, well before the Company had fulfilled its obligation under the 2006 Sale and Leaseback Transactions in violation of Generally Accepted Accounting Principles ("GAAP").  The Amended Complaint further asserted that TOPT's independent auditor, E&Y-Hellas, resigned as the Company's auditor as a result of Defendants' accounting treatment for the seller's credit.  Lead Plaintiff also alleged that the price of TOPT common stock was artificially inflated as a result of the

---

[3]  On or about January 11, 2007, a shareholder derivative action was also filed on behalf of TOPT against certain of the Company's officers and directors.  This action was voluntarily discontinued on July 17, 2007.  Decl. ¶10, n 3.

[4]  The Amended Complaint served to amend Lead Plaintiff's Consolidated Amended Class Action Complaint (the "Complaint") which was filed with the Court on August 17, 2007.  Lead Plaintiff amended the Complaint in response to certain information contained in Defendants' motion to dismiss the Complaint filed on September 20, 2007.  Decl. ¶12.

foregoing conduct, causing damage to Lead Plaintiff and the other members of the Class who purchased or otherwise acquired TOPT common stock during the Class Period. Decl. ¶¶12-13.

On October 17, 2007, Defendants filed a motion to dismiss the Amended Complaint. Following briefing, the Court by Order dated December 18, 2007, denied Defendants' motion to dismiss and ordered that limited discovery of Defendants and E&Y be conducted on certain issues related to Lead Plaintiff's claims by the end of January 2008. Thereafter, the Parties embarked on the Court-ordered discovery. On January 3, 2008, Defendants answered the Complaint. Decl. ¶¶14-15.

**B.     Investigation and Discovery**

Prior to reaching the Settlement, Lead Counsel conducted a thorough and ongoing investigation into the claims of the Class. Lead Counsel's extensive investigation included, among other things: (i) review and analysis of public filings by TOPT with the SEC; (ii) review and analysis of press releases, public statements, news articles and other publications disseminated by TOPT and the Individual Defendants; (iii) review and analysis of TOPT's analyst conference calls; (iv) review and analysis of securities analysts' reports concerning TOPT; (v) review and analysis of other publicly available information concerning TOPT and the Individual Defendants; (vi) consultation with a damages consultant and a language consultant; and (vii) research of the applicable law with respect to the claims asserted in the Action and Defendants' potential defenses thereto. Decl. ¶17.

The Parties also engaged in discovery prior to reaching the Settlement. Pursuant to the Court's December 18, 2007 ruling on Defendants' motion to dismiss, Defendants produced and Lead Plaintiff reviewed and analyzed approximately 400 pages of documents regarding TOPT's accounting treatment for the seller's credit, TOPT's restatement and E&Y's resignation as TOPT's

5

auditor.  Lead Plaintiff also noticed and were preparing to depose Defendants Pistiolis and Tsantanis, as well as a member of TOPT's Board of Directors, when the tentative Settlement was reached. Additionally, Lead Counsel was in the process of negotiating with E&Y for the production of additional documents as well as the deposition of one of E&Y's accountants.  Decl. ¶18.

In addition, Defendants also served Lead Plaintiff with a request for documents on October 1, 2007 and, shortly thereafter, noticed Lead Plaintiff's deposition.  On November 9, 2007, Lead Plaintiff responded to Defendants' discovery requests, producing documents related to his transactions in TOPT common stock.  Lead Plaintiff sat for a deposition on November 27, 2007. Decl. ¶19.

## C.    Settlement Negotiations

The Parties began discussing a possible resolution of the Action following the Court's ruling on Defendants' motion to dismiss.  The Parties participated in several weeks of hard-fought, arm's-length telephonic negotiations before reaching a tentative agreement to settle the Action.  Thereafter, the Parties spent additional months negotiating the terms of the Settlement, and based upon Lead Plaintiff's belief that the terms of the Settlement are fair, reasonable and adequate, the Parties finalized the papers supporting the Settlement and executed the Stipulation on April 23, 2008.  The Court granted preliminary approval of the Settlement on April 28, 2008.  Decl. ¶16.

## III.    THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e)

### A.    The Standard of Review for Approval of Class Action Settlements

Courts observe a general policy favoring the settlement of disputed claims, especially with respect to class actions.  *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-4 (E.D.N.Y. Nov. 15, 2005).  *See also Weinberger v. Kendrick*, 698 F.2d 61, 73

(2d Cir. 1982) ("The settlement of complex class action litigations are clearly favored by the courts."). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, courts have recognized that a settlement represents an exercise of judgment by the negotiating parties and that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974). As stated by the court in *Newman v. Stein*:

> [T]he role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . we recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation,' the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.'"

464 F.2d 689, 691-92 (2d Cir. 1972) (citation omitted). Rather, a strong initial presumption of fairness attaches to a proposed settlement if "it was the product of arm's-length negotiations conducted by a capable counsel, well-experienced in class action litigation arising under the federal securities laws." *In re Veeco Instruments Secs. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *17 (S.D.N.Y. Nov. 7, 2007) (internal citations omitted). *See also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Master File No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the Court should be

hesitant to substitute its judgment for that of the parties who negotiated the settlement.").  Here, where Lead Counsel engaged in settlement negotiations with Defendants over several weeks, followed by additional months negotiating the details of the Stipulation and related settlement documents, this presumption of fairness should readily attach.

### B.     The Settlement is Fair, Reasonable and Adequate and in the Best Interest of the Class

The standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether the proposed settlement is "fair, reasonable and adequate."  *Luxottica Group*, 233 F.R.D. at 310; *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 U.S. Dist. LEXIS 17090, at *9 (S.D.N.Y. Sept. 29, 2003).  Further, "in any case there is a range of reasonableness with respect to a settlement."  *Newman*, 464 F.2d at 693.  The Settlement proposed in this Action clearly falls within the "range of reasonableness."

The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  All nine factors need not be satisfied; rather, a court should look at the "totality of these factors in light of the particular circumstances."  *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *26 (S.D.N.Y. Dec. 19, 2007) (internal citations omitted).  As demonstrated herein and in the

Declaration, the Settlement clearly satisfies the foregoing factors, thereby warranting the Court's final approval.

### 1. The Risks of Litigation

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. In this Action, while the Court sustained Lead Plaintiff's claims against Defendants at the pleading stage, the ability of Lead Plaintiff to survive a motion for summary judgment turned on the limited discovery ordered by the Court in its December 18, 2007 Order.[5] Lead Plaintiff faced substantial risks, particularly with respect to proving Defendants' liability, if the Action were to proceed. Decl. ¶23. *See In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

### a. The Risks of Establishing Liability

Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL Docket No. 1500, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) (noting that "the difficulty of establishing liability is a common risk of securities litigation"); *Indep. Energy*, 2003

---

[5] According to the Court's Order, "the appropriate date for the start of the class period and the value of this lawsuit to plaintiffs and to counsel – may well be impacted by how the facts play out concerning [the point in time at which the accounting dispute between E&Y and Defendants arose]." *See* Court's December 18, 2007 Order, at p. 11, n. 8.

U.S. Dist. LEXIS 17090, at *11 (noting difficulty of proving scienter). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). In their motions to dismiss, answer to the Amended Complaint and during the Parties' settlement negotiations, Defendants vigorously and consistently asserted that Lead Plaintiff would be unable to prove specific information giving rise to any inference of scienter on the part of Defendants. With respect to TOPT's accounting for the $55 million seller's credit associated with its 2006 Sale and Leaseback Transactions, Defendants asserted that they acted in good faith at all times and exercised reasonable due diligence in reliance on the approval of their outside auditor, E&Y. Defendants contended that, not only did E&Y review the Company's first two quarterly financial statements for 2006 and approve the Company's initial accounting treatment of the seller's credit, but E&Y also issued a comfort letter that included the quarter during which the transaction was booked. Defendants further contended that after E&Y re-reviewed the seller's credit and decided that it should be accounted for as a "residual value guarantee," TOPT restated its financial results for the effected quarters of 2006, demonstrating that TOPT was "completely forthright" in its actions.[6] In further support of this assertion, Defendants point to the fact that the Company's restatement resulted in the reduction of net income by only $0.01 per share for Q1 2006 and only $0.07 per share for Q2 2006, as well as to the absence of any insider stock sales. Decl. ¶24.

In addition, Defendants also raise, among others, the following defenses to Lead Plaintiff's claims: (i) any alleged misrepresentations or omissions, if any, are immaterial as a matter of law; (ii) TOPT's public statements, registration statement/prospectus and SEC filings contained adequate

---

[6] *See* Defendants' Memorandum in Support of Motion to Dismiss the Corrected and Amended Consolidated Class Action Complaint, at pp. 10-12.

warnings of the risks related to investments in TOPT securities; (iii) certain of the alleged false and misleading statements are non-actionable forward-looking statements and protected by the PSLRA's safe-harbor provision; and (iv) the decline in TOPT's earnings had nothing to do with the claims asserted by Lead Plaintiff, but rather was the result of "hindsight, bad timing or bad luck" in the face of a volatile tanker market (*i.e.*, "additional charter expenses and "heavy, extended dry-docketing schedule"). Going forward, Lead Plaintiff would expect Defendants to build foundations for each of these defenses, and others, and to assert many of them at summary judgment and/or trial. Decl. ¶25.

### b.    <u>The Risks of Establishing Damages</u>

Lead Plaintiff also faced substantial obstacles to proving loss causation and damages. In order to prove loss causation and damages, Lead Plaintiff would be required to prove that Defendants' alleged false and misleading statements and omissions of material fact inflated the price of TOPT common stock during the Class Period, and that upon the Company's disclosure of such misinformation, the price of TOPT common stock dropped and damaged Lead Plaintiff and the Class. Lead Plaintiff would also be required to prove the amount of artificial inflation in the price of TOPT common stock. Decl. ¶26. *See, e.g., Gordon Partners v. Blumenthal*, No. 02 Civ. 7377 (LAK) (AJP), 2007 U.S. Dist. LEXIS 9110, at *37 (S.D.N.Y. Feb. 9, 2007) (granting defendant's motion for summary judgment for, among other reasons, plaintiff's failure to demonstrate loss causation); *In re Omnicom Group, Inc. Secs. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) (same).

Although Lead Plaintiff would present expert testimony which he believes would meet his burden on the issues of loss causation and damages, and to rebut any of Defendants' arguments, one cannot predict how a jury would weigh competing experts' testimony. This uncertainty is

compounded by the fact that there would likely be testimony from multiple experts on such areas as the shipping industry, accounting and damages. Moreover, the crucial element of damages would likely be reduced at trial to a "battle of the experts." Decl. ¶26. *See, e.g., EVCI Career College*, 2007 U.S. Dist. LEXIS 7918, at *24 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d (2d Cir. 1997) (noting unpredictability of outcome of battle of damage experts)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").[7] The Class is by no means assured of a ruling in its favor. Thus, the uncertainties concerning liability, loss causation and damages strongly support approval of the Settlement.

### 2. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *Luxottica Group*, 233 F.R.D. at 316 ("The present settlement, achieved after years of active litigation, must be balanced against the expense and delay necessary to achieve a potentially larger result after trial and appeals."). The Court need only determine whether the

---

[7] In addition, before a jury may determine whether Lead Plaintiff's or Defendants' damages model is more accurate, a court must first determine that Lead Plaintiff's damages model is admissible. *See, e.g., Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, slip op. at 3-8 (W.D. Miss. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony).

Settlement falls within a "'range of reasonableness.'"  *PaineWebber*, 171 F.R.D. at 130 (citation

omitted); *see also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried

before a jury result in the full amount of damages claimed).

The range of reasonableness of the Settlement Amount in light of the best possible recovery

and the attendant risks in litigation, was an important consideration in Lead Counsel's decision to

settle the Action and weighs strongly in favor of the Settlement.  Here, the Class will receive

$1,200,000 in cash in exchange for the release of all claims against the Defendants.  This recovery

represents approximately 10.8% of the Class' estimated damages (according to a preliminary

damage calculation by Lead Plaintiff's damages consultant as $13 million).  *See  Hicks v. Morgan*

*Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *19  (S.D.N.Y. Oct. 24,

2005) (finding settlement representing 3.8 % of plaintiffs' estimated damages to be within the range

of reasonableness); *Merrill Lynch*, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007)

(finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the

higher end of the range of reasonableness of recovery in class action securities litigations").[8]   In

reaching the Settlement, Lead Counsel placed particular emphasis on: (i) the risk of continued

prosecution of the Action; (ii) Defendants' significant defenses to scienter; and (iii) the time and

expense which would be required to prosecute the Action through trial, especially in light of the

location of the corporate defendant (the Marshall Islands), as well as its former auditor, E&Y

---

[8]   Moreover, if it was determined through further discovery that the disagreement between
Defendants and E&Y occurred after March 13, 2006, the total pool of damages available to the Class
would be decreased substantially.  *See* Court's December 18, 2007 Order, at p.12.

(Greece). Decl. ¶27. In light of the foregoing, the Settlement provides a substantial recovery for the Class and falls well within the range of possible recovery considered fair, reasonable and adequate.

### 3. The Complexity, Expense and Likely Duration of the Litigation

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See also In re: Gilat Satellite Networks, Ltd.*, CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to litigate."); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (it is "beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members") (internal quotations omitted). Not only does this Action involve many complex legal and factual issues relating to complicated accounting treatments applied to the Company's balance sheets, but the Action involves the complexities associated with litigating against foreign defendants. Ongoing litigation would surely necessitate researching and complying with a foreign body of law and navigating through the complicated rules and procedures of international law, such as the Geneva Convention. In the discovery phase of litigation alone, the cooperation of witnesses beyond the subpoena power of the Court, may well have proven elusive. Most, if not all, of the documents and testimony provided during the depositions would have required translation. Decl. ¶28. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *7 (S.D.N.Y. May 14, 2004) (approving settlement in action against foreign company, where many of the defendants, witnesses and documents were located abroad, beyond the court's subpoena power); *Schwartz v. Novo Industri*

14

*A/S*, 119 F.R.D. 359, 363 (S.D.N.Y. 1988) (weighing complications of discovery with a foreign defendant in favor of settlement).

At the time the Settlement was reached, the Parties were engaged in the limited discovery ordered by the Court in its December 18, 2007 Order. Given the fact that many of the witnesses are located in the Marshall Islands and Greece, depositions would likely have entailed extensive international travel. *See Gilat*, 2007 U.S. Dist. LEXIS 29062, at *36 (finding litigation against foreign defendant rendered costs of litigation 'extremely high,' due to increased costs and complexity of discovery). Expert discovery would also be both time-consuming and extremely expensive as the issues involved would require each side to obtain specialized experts in the shipping industry, in addition to accounting and damages experts. Moreover, the costs associated with litigating the Action, through the completion of merits and expert discovery, summary judgment, preparation for trial, and trial, would be significant, and would require many hours of the Court's time and resources. As a result, it could be years before the Class would receive a recovery, if any. Decl. ¶29. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *33 ("Each step of the way, expenses would continue to accumulate, further decreasing the funds available to Class Members."); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *16 ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

### 4.    The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Veeco*, 2007 U.S. Dist.

LEXIS 85629, at *21-22 (where no objections and one request for exclusion were received, the Court found this fact to show those affected by the settlement had "overwhelmingly endorsed it" and noted that the reaction of the class is perhaps "the most significant factor to be weighed in considering its adequacy") (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  Indeed, following the dissemination of over 30,000 copies of the Notice to potential Class Members, and as of the July 2, 2008 deadline for filing objections and/or requests for exclusion, not one recipient of the Notice has objected to the Settlement, and only three Class Members have requested exclusion from the Class.  *See* SCS Aff. ¶¶8, 10.  This absence of dissent combined with the minimal number of exclusions militates strongly in favor of the Court's final approval of the Settlement.  Decl. ¶30.  Additionally, over 1,000 claim forms have been submitted by Class Members, well before the September 12, 2008 submission deadline, further evidencing the support of the Class.  SCS Aff. ¶12.

### 5.    The Stage of the Proceedings and Amount of Discovery Completed

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.45 (4th ed. 2002); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding that it was not necessary for court to find that parties had engaged in extensive discovery in order to approve a proposed settlement; but rather that it need merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (internal citation omitted).

16

By the time the Settlement was reached, Lead Counsel had sufficient knowledge and understanding of the merits of the claims alleged in the Action and the defenses that would be asserted by Defendants to determine that the Settlement confers a substantial benefit upon the Class. Lead Counsel obtained this knowledge through over a year of active litigation -- drafting two detailed amended complaints; investigating and researching the facts and issues required to craft those complaints, including the review and analysis of TOPT's SEC filings, securities analyst reports, press releases and other publicly available information regarding the Defendants; consultation with a damages consultant; briefing arguments asserted in Defendants' motion to dismiss the Amended Complaint; reviewing and analyzing approximately 400 pages of documents produced by Defendants; and preparing to depose the Individual Defendants and a member of TOPT's Board of Directors. Lead Counsel's understanding of the strengths and weaknesses of Lead Plaintiff's claims was further enhanced following several weeks of hard-fought settlement negotiations with Defendants. As such, the knowledge gained by Lead Counsel during the course of litigation as well as the resolution of the Action guided Lead Counsel in its decision to settle the Action and in its recommendation of the Settlement to Lead Plaintiff. Decl. ¶31. Thus, this Action had advanced to a stage where the parties certainly "'have a clear view of the strengths and weaknesses of their cases.'" *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *10 (citation omitted). *See also EVCI Career Colleges*, 2007 U.S. Dist. LEXIS 57918, at *19 (finding factor supported settlement where Lead Counsel had undertaken an extensive investigation and where formal discovery had only just commenced).

6.      **The Risks of Maintaining the Class Action Through Trial**

Here, the Class as pled in this Action has only been certified for settlement purposes. But for the Settlement, and as evidence in Defendants' Answer to the Amended Complaint, Defendants would have attacked testimony provided by Lead Plaintiff at his deposition and contested Lead Plaintiff's motion for class certification. Even if certified, the Defendants would have likely taken any opportunity to argue for decertification as the Action progressed. Further, there is no assurance of maintaining certification of a class, as courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time. Decl. ¶32. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the Settlement avoids any uncertainty with respect to this decertification.

7.      **Ability of the Defendants to Withstand a Greater Judgment**

In assessing a proposed settlement, the court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. While it is not necessarily the situation here that Defendants cannot withstand a greater judgment, the question exists whether Lead Plaintiff could ever *collect* on a judgment given that all Defendants are located abroad in the Marshall Islands and Greece. Decl. ¶33. Therefore, this Court should find that an analysis of this factor also weighs in favor of the Settlement.

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

In *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), the Supreme Court held that a class seeking to be certified for purposes of effectuating a settlement must

satisfy the applicable requirements of Rules 23(a) and 23(b)(3), *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority. *See In re Blech Secs. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment […] is particularly appropriate when plaintiffs seek redress for violations of the securities laws..[and]..[a]ccordingly, in [securities cases], when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward."). This Court conditionally certified the proposed Class in its Preliminary Approval Order and, as detailed below, the proposed Class satisfies the requirements of Rules 23(a) and 23(b)(3)

### A.    <u>Numerosity, Commonality and Typicality</u>

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3). Over 30,000 copies of the Notice were sent to potential Class Members who purchased or otherwise acquired the common stock of TOPT between March 13, 2006 and November 29, 2006, inclusive. *See* SCS Aff ¶8. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 FRD 147, 157 (S.D.N.Y. 2007) ("Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market." (internal citation omitted); *Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283, at *4 (S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases exceed 100). Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether Defendants alleged conduct violated the federal securities laws and whether Defendants' public statements misrepresented material facts about the Company's business, operations and management).

In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities cases. *See also Veeco*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of securities fraud litigation."); *In re MetLife Demutualization Litig.*, 229 F.R.D. 369, 373 (E.D.N.Y. 2005) (noting that securities fraud cases, by their very nature, usually allege a common course of conduct which meets the requirements of Rule 23(a)(2). Further, Lead Plaintiff's claims are "typical" of other Class Members' claims because he purchased or acquired TOPT common stock during the period of asserted price inflation and thus has alleged economic harm similar to that suffered by other Class Members. Decl. ¶¶35-37. *See In re Host Am. Corp. Secs. Litig.*, Master File No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *14-15 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged that defendants committed the same acts, in the same manner against all class members).

## B.     Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiff to demonstrate that: (1) there is no conflict of interest between Lead Plaintiff and the other Class Members; and (2) Lead Counsel is qualified, experienced and capable of conducting the Action. *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *20-21. Here, this Court has already designated the proposed class representative as Lead Plaintiff pursuant to the PSLRA, which provides that the Court "shall appoint as lead plaintiff the member or members of the plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, Lead Plaintiff has retained highly competent counsel with extensive experience litigating complex securities class actions, which this Court has already approved. *See* biography of

SBTK attached to the Declaration as Exhibit 2.  Thus, Lead Plaintiff and his counsel have diligently advanced the interests of the Class.  Decl. ¶38.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). In this Action, both of these requirements are satisfied.  First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof.  *Id*. at 136.  As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem*, 521 U.S. at 625.  Here, the issues of liability and causation are common to all members of the Class and clearly predominate over any individual issues.  Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in TOPT common stock.  *In re Salomon Analyst Metromedia Litig.*, No. 02 Civ. 7966 (GEL), 2006 U.S. Dist. LEXIS 41939, at *29-30 (S.D.N.Y. June 20, 2006) ("[i]t is beyond dispute…that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities,…common issues will predominate over individual ones").  Decl. ¶39.

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.

## V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The Gross Settlement Fund will be used first to pay (i) any taxes owed; (ii) all administrative costs, including the costs of notice; and (iii) attorneys' fees, expenses and interest as awarded by the Court.  Upon approval of the Settlement and entry of an order approving distribution, the Net Settlement Fund shall be distributed to Class Members who are not otherwise excluded from the Class and who timely submit valid Proof of Claim and Release forms ("Proofs of Claim") to the Claims Administrator ("Authorized Claimants").  Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each authorized claim bears to the total of all authorized claims as explained in the proposed Plan of Allocation (the "Plan") contained in the Notice.  The Plan sets forth the manner in which the Net Settlement Fund shall be distributed to Authorized Claimants.  Decl. ¶40.  *See also* SCS Aff. Exh. C.

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: "namely, it must be fair and adequate."  *Maley*, 186 F. Supp. 2d at 36 (citation omitted).  Further, "[i]f the plan of allocation is formulated by 'competent and experienced class counsel, an allocation plan need only have a 'reasonable, rational basis.'"  *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *27 (S.D.N.Y. Jan 31, 2007) (citing *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *19-20).  *See also Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at *15 (giving considerable weight to opinion of counsel in making its decision to approve plan of allocation).  Lead Counsel, after careful consideration and detailed analysis, prepared the Plan with the assistance of its damage consultant.  Decl. ¶40.

The Plan reflects the proposition that the price of TOPT common stock was artificially inflated from the beginning of the Class Period on March 13, 2006 through the end of the Class Period on November 29, 2006.  The Plan takes into account, among other things, the impact of two

22

separate disclosures made by TOPT: (i) on June 27, 2006, whereby the price of TOPT common stock dropped from an opening price of $7.45 on this date to a closing price of $6.40 on June 28, 2006 (resulting in a 13.69% one-day decline) and (ii) on November 29, 2007, whereby the price of TOPT common stock dropped from a closing price of $5.86 on November 28, 2007 to a closing price of $5.04 on November 29, 2007 (resulting in a decline of 14%). Decl. ¶41, n. 6. The Plan is not a formalized damage study however. It is a simplified methodology designed solely to compare one Class Member to another through their respective transactions in TOPT common stock during the Class Period.

The Plan was fully disclosed in the Notice that was sent to more than 30,000 potential Class Members beginning on or before May 13, 2008 and, as of the filing of this Declaration, there have been no objections to the Plan. *See* SCS Aff. ¶¶8, 11. Differences in treatment of Class Members are made only with respect to the timing of Class Members' purchases, acquisitions and sales of TOPT common stock. Overall, if the total recognized losses for all Authorized Claimants exceeds the Net Settlement Fund, each Authorized Claimants' share of the Net Settlement Fund will be determined based upon the percentage that his, her or its recognized loss bears to the total recognized losses for all Authorized Claimants. Decl. ¶42. *See also Merrill Lynch*, 2007 U.S. Dist. LEXIS 9450, at *39 ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is reasonable."). Thus, Lead Counsel believes that this method of allocation is fair, reasonable and adequate and that the Plan should be approved.

## VI.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Settlement and Plan of Allocation are fair, reasonable, and adequate, and that this Court should grant final approval of the

23

Settlement and the Plan of Allocation, and certify the Class for settlement purposes.


Dated:  July 23, 2008                     Respectfully submitted,


/s/ Ira A. Schochet
**LABATON SUCHAROW LLP**
Joel H. Bernstein
Ira A. Schochet
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477

*Liaison Counsel for Lead Plaintiff*
*and the Class*

**SCHIFFRIN BARROWAY TOPAZ**
**& KESSLER, LLP**
Benjamin J. Sweet
Jennifer L. Keeney
Jennifer L. Enck
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7056
Facsimile:  (610) 667-7706

*Lead Counsel for Lead Plaintiff*
*and the Class*

24