UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN Re TOP TANKERS, INC. SECURITIES LITIGATION | Civil Action No. 06 Civ. 13761 (CM)(KNF)<br><br>Judge Colleen McMahon |

**DECLARATION OF BENJAMIN J. SWEET IN SUPPORT OF
LEAD PLAINTIFF'S MOTION FOR DISTRIBUTION OF NET SETTLEMENT FUND**

I, BENJAMIN J. SWEET, under penalty of perjury, declare as follows:

1. I am an associate with the law firm of Barroway Topaz Kessler Meltzer & Check, LLP (f/n/a Schiffrin Barroway Topaz & Kessler, LLP), which served as Lead Counsel for plaintiff Joseph A. DeShayes, Jr. (the "Lead Plaintiff") and the Class in the above-captioned action (the "Action").

**PROCEDURAL HISTORY**

2. Lead Plaintiff (on behalf of the Class) and the Defendants (as defined below) (together, the "Parties") entered into a Stipulation and Agreement of Settlement dated April 23, 2008 (the "Stipulation"), wherein the Parties agreed, in substance, that in exchange for the payment of $1,200,000 plus any accrued interest (the "Settlement Fund"), there would be a full and complete settlement of all class claims against defendants Top Tankers Inc. ("TOPT" or the "Company") (n/k/a Top Ships Inc.), Evengelos J. Pistiolis and Stamatios N. Tsantanis (collectively, the "Defendants"). The Settlement Fund, net of any taxes on the income thereof, and net of any funds used to pay Court-awarded attorneys' fees and expenses and other costs, including notice and administrative costs and escrow fees, is the Net Settlement Fund.

3. By its Order for Preliminary Approval and for Notice and Hearing dated April 28, 2008 (the "Preliminary Approval Order"), the Court directed that the Notice of Proposed Settlement, Motion

1

for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing (the "Notice") be mailed to all identifiable members of the Class. The mailing of the Notice was conducted in accordance with the Preliminary Approval Order.

4.   Thereafter, the Court held a hearing on July 31, 2008 to consider, among other things, whether the proposed Settlement should be granted final approval. By its Memorandum Decision and Order Approving Settlement and Awarding Fees dated July 31, 2008 (the "Final Order"), the Court approved the Settlement and Plan of Allocation as fair, reasonable and adequate. In addition, the notice procedures were declared to be proper, and the Action was dismissed with prejudice. Also in its Final Order, the Court certified the following Class for settlement purposes:

> All persons and entities who purchased or otherwise acquired the common stock of TOPT between March 13, 2006 and November 29, 2006, inclusive (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

5.   Pursuant to the Stipulation, Co-Lead Counsel retained Strategic Claims Services, LLC ("SCS" or the "Claims Administrator") to administer the Settlement, to perform all analyses and accounting procedures in connection with the claims filed, and to effectuate distribution of the Settlement Fund. SCS has consented to the jurisdiction of this Court.

## THE SETTLEMENT FUND

6.   On or before May 14, 2008, Defendants caused to be paid $1,200,000 into an interest bearing escrow account maintained by Sovereign Bank for the benefit of the Class. In total, $13,717.63 in income has been earned on the settlement proceeds from the date of the initial deposit through November 30, 2009. In addition, the following settlement fund expenses have been paid from the Settlement Fund: (i) a total of $76,771.93 in administrative and escrow related expenses, (ii)

$146,777.33 in attorneys' fees and expenses awarded by the Court[1] and (iii) $3,000 to the Lead Plaintiff as reimbursement for his effort in representing the Class. As of November 30, 2009, the Net Settlement Fund was $987,168.37.

## CLAIMS PROCESSING AND DETERMINATIONS

7. In accordance with the Notice, all Class Members wishing to participate in the Net Settlement Fund were required to complete a Court-approved Proof of Claim and Release form ("Proof of Claim") and to mail the Proof of Claim to the post office box identified in the Notice, which was maintained by SCS.

8. SCS has carefully reviewed, processed and analyzed all Proofs of Claim received. *See* Affidavit of Paul Mulholland, CPA, CVA, the President of SCS (the "Mulholland Affidavit" or "Mulholland Aff."), ¶10, submitted herewith. The report of SCS, which analyzes each claim received by SCS and administratively determines which claims are submitted properly and timely, which claims are untimely, but otherwise valid, and which claims are not valid, is attached to the Mulholland Affidavit as Exhibits A and B. Of the 2,319 total claims received, 1,423 claims were submitted timely and considered valid; and 44 claims were postmarked after the September 12, 2008 submission deadline, but considered valid. *See* Mulholland Aff. ¶11(a); *see also* Exhibit B (attaching computer printout listing all claims filed in this Action). No valid claim was rejected because it was postmarked after the September 12, 2008 submission deadline. *Id.* According to its analysis, SCS has found 1,467 of the total claims submitted to be proper and considered valid. *Id.* In the accompanying Motion for Distribution of Net Settlement Fund, Lead Counsel is requesting Court approval of these claims. The total Recognized Claim amount of the 1,467 claims SCS has accepted

---

[1] Pursuant to the Court's Final Order dated July 31, 2008, the Court awarded Lead Counsel 10% of the Settlement Fund (or $120,000) in attorneys' fees and $25,777.33 in expenses.

and the value for which approval is sought, calculated pursuant to the terms of the Plan of Allocation set forth on pages 5 and 6 of the Notice, is $4,866,458.80. *See* Mulholland Aff. ¶11(a). This total Recognized Claim amount includes $4,307,571.05 from valid and timely submitted claims and $558,887.75 from valid claims submitted after the September 12, 2008 submission deadline. *Id.*

9.  SCS has also rejected 852 claims. *See* Mulholland Aff. ¶11(b)-(c); *see also* Exhibit D (attaching computer printout listing all rejected claims) and Exhibit E (attaching computer printout listing all ineligible claims). These 852 claims were rejected for one of the following reasons: (i) deficiencies of the claims were never cured; (ii) no Recognized Claim when calculated pursuant to the Plan of Allocation; (iii) no purchases and/or acquisitions of TOPT common stock during the Class Period; (iv) shares were received or transferred but not purchased; (v) shares were sold short; (vi) claims covered securities other than TOPT common stock; or (vii) claim was a duplicate. *See* Mulholland Aff. ¶11.

10. For all submitted claims that were determined to be deficient due to insufficient documentation to support Class Period trading activity, SCS mailed a deficiency notice to the claimant advising him, her or it of the defect(s) with the claim and what, if anything, was necessary to complete the claim. This letter required submission of the appropriate information and/or documentary evidence to complete the claim, or the claim would be rejected in its entirety. *Id.* For all submitted claims that were determined to be ineligible (*i.e.*, where the claim calculated to no Recognized Claim, the claim had no purchases and/or acquisitions of TOPT common stock during the Class Period, the shares at issue were received or transferred but not purchased, the shares at issue were sold short, the claim covered securities other than TOPT common stock, or the claim was a duplicate), SCS mailed a rejection notice to the claimant advising him, her or it of the defect(s) in

the claim and what was necessary to complete the claim, or the claim would only be eligible to the extent it was complete and documented. *See* Mulholland Aff. ¶11. Both letters provided a 20 day period to complete the claim. *See* Exhibits C and F to the Mulholland Affidavit (attaching a sample of the deficiency and rejection notices).

11. Not one claimant has requested this Court's review of his, her or its claim. *See* Mulholland Aff. ¶11.

## SUMMARY OF CLAIMS PROCESSING

12. As stated above, 1,423 claims were submitted properly, timely and were considered valid.

13. As stated above, 44 otherwise valid, but late-postmarked claims were received and processed. Lead Counsel believes that it would be fair, reasonable and in the interest of justice to allow the otherwise valid, but late-postmarked claims to share in the Net Settlement Fund. Lead Counsel requests that these claimants who filed otherwise valid, but late postmarked claims be allowed to participate in the Net Settlement Fund as if their claims had been timely filed. *See* Mulholland Aff. ¶11.

14. Lead Plaintiff respectfully requests that this Court approve the administrative determination of Lead Counsel and SCS to approve all valid claims listed, with a total Recognized Claim amount of $4,866,458.80. *See* Mulholland Aff. ¶11.

15. Lead Plaintiff respectfully requests this Court to approve the administrative determination of Lead Counsel and SCS to reject the claims identified in ¶9 above, which were deficient and never cured, had no Recognized Claim when calculated pursuant to the Plan of Allocation, had no purchases and/or acquisitions of TOPT common stock during the Class Period, involved shares that were received or transferred but not purchased, involved shares that were sold short, involved

covered securities other than TOPT common stock, or were duplicates. *See* Mulholland Aff. ¶11.

## TAXES AND EXPENSES

16.  Pursuant to the Settlement, the $1,200,000 was invested principally in short term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments). Thus, the interest earned on the settlement proceeds through November 30, 2009 is $13,717.63. Under the provisions of §1.468B of the Internal Revenue Code, taxes must be paid on the Settlement Fund. Monies payable to the Internal Revenue Service at the time of distribution, if any, on the interest earned on the settlement proceeds will be withheld from payment to the Class and immediately paid to the Internal Revenue Service.

17.  Lead Plaintiff respectfully requests that SCS be paid the sum of $81,999.85 from the Settlement Fund for its unpaid fees and expenses for services rendered in connection with the administration of the settlement. *See* Mulholland Aff. ¶12; *see also* Exhibit G to the Mulholland Affidavit (attaching invoices reflecting SCS's fees and expenses).

## DISTRIBUTION PROCESS

18.  The Net Settlement Fund is ready to be distributed at this time. Lead Plaintiff therefore respectfully request the Court direct SCS to distribute the Net Settlement Fund to the claimants whose claims Lead Counsel and SCS administratively determined to be valid, as listed on Exhibit B to the Mulholland Affidavit. Pursuant to the Notice sent to the Class, if these administrative determinations are approved, each of these claimants will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

19.  It may be expected that not all of the checks sent to the 1,467 Authorized Claimants

(including late filing claimants) will be cashed promptly, and that not all of the Authorized Claimants will be located.

20. Lead Plaintiff respectfully requests that, if any funds remain in the Net Settlement Fund six (6) months after the initial distribution of such funds by reason of un-cashed distributions or otherwise, and after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, the remaining funds shall be re-distributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, if a re-distribution is determined to be economically feasible by Lead Counsel. If after six (6) months after such re-distribution, if undertaken, any funds remain in the Net Settlement Fund, then such balance shall be contributed to non-sectarian, not-for-profit organization(s) designated by Lead Counsel after notice to the Court and subject to direction, if any, by the Court.

21. Lead Plaintiff respectfully recommends that one (1) year after the distribution of the Net Settlement Fund, the Claims Administrator be authorized to follow its internal document retention policy, permitting the Claims Administrator to discard documents relating to this Action in accordance with that policy. The proposed Order has been drafted to permit the Claims Administrator to discard these documents in accordance with its policy.

22. Lead Plaintiff respectfully requests this Court release and discharge all persons who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims filed in this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund, or the Net Settlement Fund from any and all claims arising out of such

involvement, and, pursuant to the release terms of the Settlement, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the Released Parties beyond the amount allocated to them by the Settlement as approved by the Court.

DATED: December 3, 2009

_____
BENJAMIN J. SWEET